TUCKER, P.
The principal question in this cause is as to the weight and influence of the audited account; and it only requires that we should advert to the real character of the case, to enable us to see that it is entitled to none. It was not even evidence between these parties in reference to the object and purpose of the suit.
The bill is filed by an administrator, who alleges that he has made large advances for the estate, over and above the assets, and seeks to charge those advances upon the realty in the hands of the heirs. His claims upon the real estate are not then executorial; and they can only be sustained by regarding him in his true light, and substituting him to the rights of the creditors whom he has paid. He stands in their shoes, and must establish his demand precisely as they must have done. Had the bill been filed by' the creditors themselves, they must have shewn, 1. the liability of the realty' to their demands, and 2. the amount of those demands. Then, admitting the first, how is the second to be established? Certainly not by the settlement of the ^administrator’s account by auditors. That settlement grows out of the obligation of the administrator’s bond, that he shall settle his account of the administration of the personalty when required. That settlement is made with the court, in their character of a court of probat, having jurisdiction over the personal estate of decedents only. They have no farther power than to audit, settle and allow the disbursement of that estate by the administrator. The limit of their authority is the amount of the personal estate. The question *699 ■whether the administrator has paid beyond the assets, so as to entitle him to charge the realty, is, as to that court, coram non judice; the only modes of settling that question being by the agreement of the parties, by action at law, or by bill in equity. With the settlement before auditors, the heir as such has no concern, nor can such settlement be evidence against him either prima facie or otherwise. IOven a judgment against an executor is no evidence against the heir, of the justice or amount of a creditor’s demand; it is res inter alios acta. 1 Muuf. 437. A fortiori it would seem, that the ex parte report of auditors, appointed only to settle the disbursements of the personal assets, cannot be so. The account in this case, then, was no evidence before the commissioner of the court of chancery, except so far as the acknowledgment of the brothers made it so. But in that acknowledgment the sisters did not join, and it did not therefore bind them. Therefore it could not avail the administrator; for he could have no decree for a sale of the realty without establishing- his demand in such mode as would bind all the heirs. It is like the case of a confession of judgment by one of two joint obligors, and a successful defence of the action by the other; in which case, the confession avails nothing, and judgment is entered for both defendants. The demand is entire, and if disproved as to one, is disproved as to all, the confession to the contrary notwithstanding. The application of the principle seems peculiarly proper in the present case, as the confession seems to have been dictated by am overweening confidence of younger brothers in the superior intelligence of an elder brother.
If the audited account be altogether rejected, it is not necessary to say any thing of the unjustifiable course of the plaintiff and the commissioner. But, as a matter of practice, I think it behooves us to express our decided disapprobation of that course. Where the vouchers are ostensible, as they were clearly shewn to have been in this case, the defendants have a right to call for them. Admit the account to have been prima facie evidence, still it was only prima facie evidence. The defendants had a right to controvert it. Had they not a right to call for the evidence in the possession of the plaintiff, to enable them to controvert it? By what rule or principle of law were the defendants excluded from the right to demand, tüat the plaintiff should produce the evidence which he had in his pocket in support of his account, in order that it might be seen whether the items were or were not sustained by the vouchers? I know of none.
But the commissioner had the examination of them, though they were denied to the parties. When has this sort of secret inquisition been introduced into the proceedings of our courts of justice? What court would receive as evidence, and act upon, a paper offered by one party, or suffer it to go to a jury, without the inspection or examination of the other? As well might the commissioner have examined in secret a witness offered by the plaintiff to prove his demand, and have sent the defendants out of his office, thus depriving them of the power of objection, contradiction, and cross examination. His course in this case is as novel and unprecedented, as it is incompatible with those first principles of judicial proceeding, which secure to every party the right of being confronted with the witnesses, *of knowing the nature of the allegations against him, and of seeing and hearing the evidence by which they are supported. Of what use would be the privilege of excepting to the opinion of a court or the report of a commissioner, if the evidence upon which they have acted be scrupulously hidden from the eyes of the party complaining? It would be practically of'no effect; and it is indeed matter of surprise, .that, at this day, such an instance should be afforded of a violation of the most familiar principles, as this record presents.
I am clearly of opinion, then, that the decree in this case should be reversed, and the cause sent back to the commissioner, with instructions to disregard the audited account of the Hanover commissioners, and to report the amount and character of the plaintiff’s claim against the estate of John Street the younger, whether in his own right, or as substituted for the creditors whom he has paid.
Another question however presents itself, which it is important to settle. The will of John Street the elder by its terms charges that portion of his estate which he derived from his son John the younger, with the debts of his son ; — and if the will be executed so as to pass or charge real estate, this will must have that effect. But the will is not attested by any witnesses, and in the sentence of probat there appears no proof that it was wholly written in the testator s hand. It was, however, ordered to be recorded in general terms, and not merely as a will of personalty. In this state of things, it would seem that we must, according to the decisions of this court, cited at the bar, take it to be a good will to charge the realty. To this course of decisions I feel myself bound to defer, where, as in this case, it is possible, evidence may have been given of the whole will being in the testator’s handwriting. This, though it be not true, we may be bound to presume to be true. If, however, a case were to occur where upon its face the will could *not pass real estate, as if it were not signed at all, 1 should much incline to consider the order to record it, however general, as properly to be interpreted in the more restricted sense of declaring it a good will of personalty only.
The other judges concurred, that the decree should be reversed with costs, and the cause remanded, in order that the accounts should be sent back to the commissioner, with instructions to disregard the audited account of the Hanover commissioners, and to report the amount and character of the appellee’s claims, whether in his own rights or as substituted in place of the creditors whose claims he had discharged, and to be further proceeded in to a final decree.